IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:21-CV-82-FL

| | | |
|---|---|---|
| APRIL CHRISTINA MALAMBRI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings. (DE 14, 16). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, issued a memorandum and recommendation ("M&R") (DE 18), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm the final decision by defendant. Plaintiff timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For following reasons, the court adopts the M&R, denies plaintiff's motion, and grants defendant's motion.

## BACKGROUND

On October 31, 2014, plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning January 2, 2014. The application was denied initially. A hearing was held December 28, 2016, before an administrative law judge ("ALJ"), at which the alleged disability onset date was amended to

January 24, 2013. The ALJ issued a decision denying plaintiff's claims on March 16, 2017, and the appeals council denied plaintiff's request for review February 9, 2018.

Plaintiff commenced a prior action in this court on April 4, 2018, seeking judicial review of defendant's decision. With consent of the parties, the case was reassigned to United States Magistrate Judge James E. Gates who granted by September 9, 2019, written order plaintiff's motion for judgment on the pleadings, remanding the case to the ALJ. Malambri v. Saul, No. 7:18-CV-60-JG (E.D.N.C. Sept. 9, 2019).

On remand, hearings were held on August 5, 2020, and January 27, 2021, before an ALJ who determined that plaintiff was not disabled by decision dated March 2, 2021. After unsuccessfully seeking review by the appeals council, plaintiff commenced the instant action on May 3, 2021, once again seeking judicial review of defendant's decision.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).[1] The standard is met by "more than a mere scintilla of evidence . . . but less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

---

[1]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

"A necessary predicate to engaging in substantial evidence review . . . is a record of the basis for the ALJ's ruling, which should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir.2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016).

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medial impairment meets or exceeds the severity of one of the [listed] impairments; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the social security claimant during the first four steps of the inquiry, but shifts to defendant at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 24, 2013. At step two, the ALJ found that plaintiff had the following severe impairments: lumbar spine degenerative disc disease with facet arthropathy, status-post surgery; neuropathy; and bilateral popliteal cyst. However, at step three, the ALJ determined that these impairments were not severe enough to meet or, either individually or in combination, medically equal one of the listed impairments in the regulations.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations:

> [P]ushing and pulling limited to the light level; no use of foot controls; no climbing of ladders, ropes, or scaffolds, kneeling, or crawling; no more than occasional climbing of ramps or stairs, balancing, stooping, or crouching; no exposure to extreme heat-cold, to excessive vibration, or to workplace hazards (such as moving, industrial-type machinery and unprotected heights).

(Tr. 720 (footnote omitted)). At step four, the ALJ concluded plaintiff is unable to perform any past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

4

B.     Analysis

In her objections, plaintiff argues that the ALJ failed to address the instructions set forth in the United States District Court's order remanding the claim for further consideration of the opinions of Michael Picciano, M.D. ("Picciano"), plaintiff's treating physician. Plaintiff additionally argues that the ALJ violated 20 C.F.R. §§ 404.1527(c)(1) and (c)(2), by relying on hearing testimony from a non-examining medical expert, John F. Kwock ("Kwock"), despite his opinion being neither well-founded nor consistent with the record on the whole. Upon careful review of the record, the court finds that the magistrate judge already has addressed thoroughly plaintiff's arguments. See Orpiano, 687 F.2d at 47. Having reviewed the entire record de novo, the court agrees with the findings and analysis set forth in the M&R, and, therefore, adopts the M&R in full. See 28 U.S.C. § 636(b)(1).

To augment the analysis in the M&R, the court writes separately to address evidence and arguments raised by plaintiff in her objections that are not discussed in the M&R. In particular, plaintiff argues that the ALJ's most recent decision again fails to explain how the medical record and plaintiff's daily activities are inconsistent with Picciano's opinions, and that the magistrate judge cited evidence not relied upon by the ALJ to fill the gap in explanation. Plaintiff additionally contends that the ALJ used hearing testimony from Kwock as a non-examining medical expert to discredit or otherwise "trump" the opinion of treating physician Picciano, thereby violating 20 C.F.R. §§ 404.1527(c)(1) and (c)(2). (Pl.'s Obj. (DE 19) at 5). Finally, plaintiff argues that Kwock's testimony indicates he intended only to address plaintiff's functioning in 2021, rather than during the entirety of the relevant period. The court addresses each argument in turn.

1. ALJ's Explanation of Weight Assigned to Picciano's Opinions

"[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178.

That discretion, however, is cabined by the six factors outlined at 20 C.F.R. § 404.1527(c), each of which "the ALJ [is] required to consider . . . before casting [the treating physician's] opinion aside." Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 385 (4th Cir. 2021). Those factors are: 1) whether the physician has examined the applicant; 2) the treatment relationship between the physician and the applicant; 3) the supportability of the physician's opinion, 4) the consistency of the opinion with the record; 5) whether the physician is a specialist; and 6) other factors brought to defendant's attention, such as the amount of understanding of defendant's disability programs and their evidentiary requirements, and the physician's familiarity with other information in the record. See id. at 384-85 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(6)); Johnson, 434 F.3d at 654.

"An ALJ must include a narrative discussion describing how the evidence supports his explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations." Woods v. Berryhill, 888 F.3d 686, 695 (4th Cir. 2018). Absent such explanation, the court is unable to engage in meaningful judicial review of the ALJ's

6

decision and remand is appropriate. See id.; Dowling, 986 F.3d at 386 ("[A]gency determinations must be made in accordance with certain procedures which facilitate judicial review" and § 404.1527(c) is "one such procedure").

Plaintiff visited Picciano for treatment at least five times between May 22, 2013, and January 3, 2017, and Picciano's opinions based upon those visits are set out in two separate documents. (See Tr. 309-14, 323-32, 701-02). The first opinion, dated November 7, 2014, (the "2014 opinion") restricts plaintiff from lifting more than 20 pounds, repetitive lifting, and prolonged sitting or standing. (See Tr. 598). The second opinion, dated November 21, 2016, (the "2016 opinion") estimates plaintiff could sit and stand for 30 minutes at a time and sit, stand, and walk for up two hours in an eight-hour workday. (Tr. at 630-36). It provides plaintiff could rarely lift up to ten pounds, would need to take two breaks every hour for thirty minutes, would be off task more than 20% of the workday, and would be absent from work roughly four times a month. (Id.). Picciano further assessed additional postural and manipulative restrictions. (Id.).

In the first disability determination, the ALJ assigned the 2014 opinion "great weight" as it was from a "treating source" familiar with plaintiff's progress and it was "consistent with the objective findings of record." (Tr. 17 ¶ 5). The ALJ assigned the 2016 opinion only "partial weight," however, reasoning, "the nature of the restrictions opined are not consistent with the record as a whole, including the claimant's high level of daily activity and ability to maintain her home and care for her children independently when her husband is away." (Id.). In remanding the case to the commissioner for further consideration, the court found the ALJ's analysis deficient in at least three respects: she 1) failed to explain how Picciano's restrictions conflicted with the record as a whole, (Tr. 864-65); 2) relied upon plaintiff's "high level of daily activity" but did not specify how the daily activities were inconsistent with "the nature of the restrictions" in the 2016

7

opinion, (Tr. 865-67); and 3) accorded great weight to the 2014 opinion based in part upon Picciano's familiarity with plaintiff as a treating physician, but omitted similar consideration of Picciano's status as a treating physician with respect to the 2016 opinion, (Tr. 863-64).

The ALJ's decision on remand remedies those deficiencies. The ALJ again assigns the 2014 opinion "great weight" because Picciano had a "treating relationship" with plaintiff and "his opinion is reasonably consistent with the overall clinical findings of the record." (Tr. 715). He also again affords the 2016 opinion only "partial weight," this time explaining:

> [w]hen compared to the overall clinical findings at the hearing level, as discussed herein, which supports no greater than moderate severity, along with the claimant's own reported activities of daily living including ability to independently maintain her household and care for children when her husband is away for months at a time, Dr. Picciano's overall opinion is too restrictive.

(Tr. 716). The discussion that the ALJ therein incorporates includes a detailed description of extensive clinical findings with respect to each impairment. For example, as to plaintiff's lumbar spine degenerative disc disease and neuropathy, ALJ describes records showing "normal cranial nerves, full strength (5/5) strength throughout, including grip, normal muscle tone, full range of motion throughout, intact reflexes, negative Romberg and Bobinski signs, and no clotus." (Tr. 713). With respect to plaintiff's history of bilateral popliteal cyst in both knees, the ALJ notes commentary by a provider that plaintiff's complaints do not correlate with clinical findings, and examination of the knees revealed "minimal effusion, good extension, good range of motion, no obvious swelling or dysfunction, and no deficits in gait, station, or coordination." (Tr. 714).

As to plaintiff's reported daily activity conflicting with Picciano's 2016 opinion, the ALJ explains further:

> The claimant admitted – during her testimony (and as noted in the medical record) – that her husband's job requires him to travel to out-of-state work sites for extended periods of time (months at a time); during those times, she is responsible for basically everything at home: the raising and care of two relatively young children, maintaining the household (cooking, cleaning, laundry, grocery shopping,

etc.), and the yardwork. Their family remains in New York, so she receives no help from them. She said that she tries to get help from her neighbors, but they are disabled. In November 2018, she reported to the pain management provider that, she had not sought treatment for her back pain since relocating from New York; and that, she had been hesitant to take any medications for the pain (Ex. 35F/16).

(Tr. 714).

Finally, recognizing Picciano's status as a treating physician, the ALJ explains that "the claimant did not have further contact with [] Picciano after approximately June 2017, as she moved away from New York, which is where he was located." (Id.). Picciano's opinion was accordingly at least temporally limited. As it was additionally inconsistent with the record, the ALJ attributes only partial weight to Picciano's 2016 opinion.

In sum, the ALJ on remand adequately explains how Picciano's restrictions set forth in his 2016 opinion conflict with the medical records and plaintiff's reported daily activities as described in the decision, and he additionally reasonably takes into account Picciano's status as a treating physician. His explanations thus cure each deficiency set forth in the United States District Court's order remanding the claim and allow for meaningful review of his reasoning.

Plaintiff's arguments to the contrary are unavailing. In her objections, plaintiff contends the ALJ and magistrate judge committed error by "hanging [their] proverbial hat on the ability to do activities such as housework, which provide little or no support for finding [p]laintiff can perform full-time competitive work." (Pl.'s Obj. (DE 19) at 3). First, neither the ALJ nor the magistrate judge rely solely on plaintiff's daily activities but rely as well upon extensive medical records. Further, the case plaintiff relies on for her contention, Williams v. Colvin, 1 F. Supp. 3d 480 (E.D.N.C. 2014), does not reference housework generally, but instead holds that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." Id. at 483 (emphasis added). The ALJ here does not refer to light housework, but instead relies upon plaintiff's testimony that for

9

extended periods of time she exclusively cares for two young children and maintains the home. Indeed, the ALJ notes that plaintiff recently fell while putting up plywood in her garage. (Tr. 714). Unlike in Williams, this is not comparable to "light" housework with little relevance to whether a claimant can perform full-time competitive work. 1 F. Supp. 3d at 483.

Plaintiff additionally contends that the M&R references evidence from the record not relied upon by the ALJ to fill gaps in explanation left by the ALJ. Where plaintiff has failed to demonstrate gaps in explanation by the ALJ, however, citation in the M&R to further substantial evidence on the record consistent with the ALJ's explanation does not create an error.

2. Kwock's Hearing Testimony

Plaintiff first argues the ALJ uses Kwock's hearing testimony to discredit Picciano's opinions, and thereby fails to properly consider Picciano's opinions as that of a treating physician entitled to controlling weight. See Mastro, 270 F.3d at 178. The ALJ, however, separately assessed Picciano's opinions in relation to evidence on the record, particularly plaintiff's own testimony and medical records not produced by Kwock. It is only after the ALJ determines Picciano's 2016 opinion is unsupported by evidence on the record and thus should not be assigned controlling weight that he concludes Kwock's testimony should be afforded comparatively greater probative weight. Thus, plaintiff mischaracterizes the ALJ's decision when she describes it as utilizing Kwock's testimony to "trump" Picciano's opinions. (Pl.'s Obj. (DE 19) at 5).

Finally, plaintiff argues Kwock's testimony indicates he opined only with respect to plaintiff's present condition rather than during the entirety of the relevant period, extending from 2013 until 2021. In particular, plaintiff cites to Kwock's testimony, when asked about Picciano's 2014 and 2016 opinions, that it was "not a matter of whether we agree or disagree because what happens here is that these RFC are in the opinions of the author of that RFC written at whatever point in time using whatever medical information they had before them." (Tr. 779). He further states, "I do

10

not know the basis upon how Dr. Picciano would have made his determinations. All I can say is that my RFC is based upon what I believe to be the objective musculoskeletal evidence that is present in this record." (Id.). While plaintiff argues that Kwock's use of the word "present" indicates he was only addressing plaintiff's present functioning, the context of Kwock's testimony makes clear that "present" modifies "in this record," which spans the entirety of the relevant period. This understanding is confirmed by the ALJ's direction to Kwock to provide an opinion regarding "the relevant time period" under consideration, as well as medical evidence discussed by Kwock from a range of dates, including 2016 and earlier. (E.g., Tr. 774, 776, 780, 785).

Thus, the court finds no error in the ALJ's treatment of Kwock's testimony.

## CONCLUSION

Based on the foregoing, the court ADOPTS the M&R. Plaintiff's motion for judgment on the pleadings (DE 14) is DENIED, and defendant's motion for judgment on the pleadings (DE 16) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 28th day of September, 2022.

LOUISE W. FLANAGAN
United States District Judge